STATE OF NEBRASKA, APPELLEE, v. GERALD DEAN GODFREY, APPELLANT.

155 N. W. 2d 438

Filed January 5, 1968. No. 36619.

A. Q. Wolf and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

(451)

McCown, J.

The defendant has appealed from a conviction and sentence for burglary. Two issues involving constitutional rights are presented. One involves an interpretation of Miranda rules and the other the waiver of the right to trial by jury.

In the early morning hours of October 20, 1966, a burglary was committed at a Safeway Store in Omaha. Some 80 or 90 cartons of cigarettes were taken. An eyewitness had been awakened by the sound of breaking glass and had observed "two fellows" coming out of the broken glass door. Two police officers stopped an automobile in the vicinity and shortly after the time of the burglary. The two white male occupants were the defendant and a companion. They were taken to the scene of the burglary. When the police officers had completed their investigation of the burglary at the store, the defendant and his companion were taken to the central police station where sergeant Kaufhold and his partner interviewed the two suspects. This interview took place in the detective bureau between 6:05 and 6:15 a.m. In advising defendant of his Miranda rights, the officers followed a "rights advisory form." The defendant was asked if he was willing to give a statement at that time and he said: "No." He was then booked on suspicion of burglary and placed in a cell. Meanwhile, the police continued their investigation in the field and found the bulk of the stolen cigarettes.

At approximately 11 a.m., officers Sieborg and Wilson had the defendant brought from his cell to a fourth floor interrogation room of the police station. At this interrogation, defendant was informed that the police had found the cigarettes. The defendant at this time was given all of the Miranda warnings pursuant to the "rights advisory form," and his responses were noted in writing by the police officers. He was advised that they were police officers; that he had a right to remain silent and not make any statements or answer any questions; that

anything he might say could be and would be used against him in court; that he had a right to consult with a lawyer and have the lawyer with him during the questioning; and that if he could not afford a lawyer, the court would appoint one to represent him. He was asked if he understood each portion of the warning as it was given to him. He was then asked: "Knowing your rights in this matter are you willing to make a statement to me now?" He answered: "Yes." He was then asked: "Do you willingly waive and do without the services of an attorney at this time?" He responded: "Yes." Following this, a typewritten statement and confession was taken from the defendant. The defendant read the statement over and stated it was true, but refused to sign it as it was "not with his thinking to sign it." The total time required for the interrogation and statement was 40 to 50 minutes.

At the trial, a hearing was held out of the presence of the jury to determine the admissibility of the statement made. Following the hearing, the trial court specifically found that the statements made by the defendant at or about 11 a.m. in the police station on the morning of October 20, 1966, were voluntarily made and were made after compliance with the requirements of Miranda. The typewritten statement was thereafter offered and received in evidence over objection.

There is no contention that incomplete or inadequate warnings were given to the defendant. There is no contention that there were any promises or threats or coercion or physical abuse. There is no contention that the defendant was ill-treated, incarcerated for long periods, nor in any way mentally deficient or unaware of the circumstances. Neither is there any contention that he was denied access to parents, friends, or others, nor subjected to any extended periods of interrogation.

Boiled to its essence, the defendant's position is that when, shortly after 6 a.m. in the detective bureau, he answered "No" to the question, "Knowing your rights

in this matter are you willing to make a statement to me now?", the negative answer to that specific question invoked his constitutional rights under Miranda, prevented any further in-custody interrogation of him by the police in the absence of a lawyer, and made inadmissible the subsequent statement obtained in the absence of counsel at 11 a.m.

Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974, has spawned reams of articles concerning its application and its peripheral boundaries. Fifth and Sixth Amendment issues, both made applicable to the states by virtue of the Fourteenth Amendment, are now interwoven in the problem of in-custody interrogation and statements resulting from it. The plural but separate and integrated nature of the privilege against self-incrimination and the right to counsel is obvious throughout Miranda. The necessary constitutional underpinning rests on compulsion. How much of "the compulsion inherent in custodial surroundings" remains, after the protective devices required by Miranda have been employed, is uncertain, particularly when applied as a rule of evidence.

The Supreme Court has not foreclosed the admission of all statements made in the atmosphere of the police station. It has said: "There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

"If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time."

"An express statement that the individual is willing

to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." Miranda v. Arizona, *supra*.

The defendant seems to concede that if there had been no prior questioning, the statements and waivers obtained at 11 a.m. might satisfy the burden of the government to "demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

The defendant's position is that whenever the specific warnings required by Miranda are once given to a defendant in custody, the warnings themselves, coupled with any inquiry as to whether defendant wishes to make a statement, must be regarded as the commencement of an interrogation. An indication that the defendant wishes to remain silent at that time, the defendant contends, fully invokes the defendant's constitutional right not only to remain silent, but to have counsel, and prohibits the introduction of any later statement made without the presence of a lawyer. We cannot agree.

From the evidence here, when the police received the "no" answer at the early morning interview made in connection with booking procedures, the interview was stopped. This should have demonstrated "that his interrogators are prepared to recognize his privilege should he choose to exercise it." Miranda clearly requires that if a defendant in custody at any time indicates that he wants an attorney before speaking to the police, any interrogation must cease until an attorney is present and the right continues to have the attorney present during any subsequent questioning. It is not clear that the same right to have an attorney present arises solely from a defendant's indication at a specific time that he does not then wish to make a statement or answer a question where, as here, he does not ask for an attorney. This

is particularly true where the police do not question him after such indication while investigation in the field is carried out for a few hours. We recognize that the police cannot be permitted to attempt an in-custody interrogation and, upon being met with a refusal, return a prisoner to his cell and then attempt to repeat the procedure periodically until a statement is obtained. However, an otherwise valid voluntary waiver of both the right to counsel and the right to remain silent, knowingly and intelligently made, followed by a statement, should not be transformed into invalidity merely because of silence at some prior time. One refusal to make a statement, when that refusal is fully honored, ought not to taint the substance of the entire subsequent procedures under the circumstances here.

The case of Tucker v. United States, 375 F. 2d 363 (8th Cir. 1967), while not identical on all its facts, did involve many similar factual circumstances. The court there said: "In resolving the question in light of the Miranda standards, the substance and not the form of the warnings should be of primary importance."

We believe also that when Miranda warnings have been fully given, the substance and not the form of the entire procedure should be of primary importance.

We hold that the fact that a defendant, as a part of the initial procedures at a police station, after full Miranda warnings, is asked whether he desires to make a statement at that time and answers negatively, does not automatically invoke his right to counsel and render inadmissible any subsequent statement obtained in the absence of counsel. Neither does such a factual circumstance, coupled with the other facts here, prohibit or invalidate a later waiver voluntarily, knowingly, and intelligently made.

The record convincingly sustains the findings of the trial court on the issue here. The warnings given constituted sufficient compliance with Miranda, and the defendant fully apprised of a meaningful choice in regard

to his right against self-incrimination, voluntarily, knowingly, and intelligently waived his privilege to remain silent and his right to counsel at 11 a.m. on October 20.

Trial of this case commenced on January 25, 1967, at 9:30 a.m. The defendant was arraigned and a jury was impaneled. After the jury was impaneled, but before opening statements were made, the defense moved to waive a jury. The motion was overruled and trial continued to the jury which found the defendant guilty.

The defendant's position is that he has an unlimited, unconditioned right to waive a jury trial, and that the refusal to grant it is reversible error.

This court, in Johnson v. State, 169 Neb. 783, 100 N. W. 2d 844, held that the constitutional right to trial by jury is a personal privilege which may be waived. A prior case to the contrary, Michaelson v. Beemer, 72 Neb. 761, 101 N. W. 1007, was expressly overruled in State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129. In the Carpenter case, this court specifically reaffirmed the holding of Johnson v. State, *supra.*

We also said: "The right to a jury trial is personal to the defendant, and the state is without power to require one if the defendant wishes to waive it." That holding, while it removed any requirement of consent by the prosecution, did not go to the issue of whether the waiver can be subjected to reasonable conditions by the court.

Singer v. United States, 380 U. S. 24, 85 S. Ct. 783, 13 L. Ed. 2d 630 (1965), held, as to federal criminal cases, that reasonable conditions may be put on waiver of jury trial, and that the conditions imposed under rule 23A, Federal Rules of Criminal Procedure, were reasonable. For a summary and discussion of the conditions imposed by the various state courts, see 51 Cornell L. Q. 339 (1966).

In this case, the motion to waive the jury trial was made after the jury trial had begun, and after the jury had been impaneled. Under such circumstances, the trial court exercised proper judicial discretion in

denying the motion. We hold that the court may reasonably require that a motion to waive a jury trial be made or filed within a reasonable time prior to trial as a condition to the consent of the court. The court, of course, may grant such a motion at any time and should do so whenever it will promote the fair, reasonable, and efficient administration of justice.

The judgment of the district court was correct in all respects and is affirmed.

AFFIRMED.