**William Joseph COUGHLAN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21626.**

United States Court of Appeals
Ninth Circuit.

Feb. 20, 1968.

Bernard Winsberg, Los Angeles, Cal. (argued), for appellant.

Anthony Glassman, Asst. U. S. Atty. (argued), William M. Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Roger Browning, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and HAMLEY, Circuit Judges, and McNICHOLS, District Judge.

PER CURIAM:

Appellant was convicted of aiding and abetting in the robbery of a federally insured bank.[1]

Trial was to the district judge, jury having been properly waived. The conviction depended on an oral confession, evidence of which was received at the trial. The oral statements involved were taken by police officers who interviewed the appellant in a jail interview room. The court held a full evidentiary hearing to determine the voluntariness of the extra-judicial admissions. Suffice to say, the record makes it abundant-

1. 18 U.S.C.A., Sec. 2113(a) (d); 18 U.S.C.A., Sec. 2(a).

ly clear that the accused was fully and fairly advised of and understood his constitutional rights, including the right to have his appointed attorney present, and with that understanding he waived those rights and voluntarily gave the incriminating statements to police officers. The trial court so found and this finding is thoroughly supported by competent evidence.

■ At the time the confession was obtained, the appellant was represented by court-appointed counsel. This fact was well known to the officers who interrogated the accused. No notice was given by the officers to defendant's counsel of the intended interviews and he was not present when the statement was taken.

Under this state of the facts, appellant contends that his constitutionally guaranteed right to counsel [2] was effectively denied. We are asked to rule that any statement, admission or confession secured by peace officers from a defendant represented by an attorney, where the attorney was not timely advised of the proposed interview or interrogation, be rejected as violative of the right to counsel. Appellant recognizes that this Sixth Amendment right may be voluntarily waived, but, at oral argument, it was contended that such a waiver would never be knowing and truly voluntary unless counsel was present to advise the client.

It may well be that the day is approaching when the right to counsel may be expanded to the point where an accused may only be interrogated by the police in the presence of his lawyer. However, no persuasive precedent for the holding here sought has come to our attention. Appellant relies heavily on the teaching of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

694 (1966). *Miranda* specifically recognizes prior cases holding that the right to counsel may be waived.[3] Here a clear and knowing waiver was shown. We are unwilling to attempt to expand the *Miranda* ruling to the extent sought by appellant.

■ We, on the other hand, do not want to be considered as lending our approval to the practice, if indeed a practice exists,[4] of interviewing accused persons in jail in the absence of counsel. The better, fairer and safer practice is to afford the defendant's attorney reasonable opportunity to be present. When this is done the heavy burden of proving a waiver of constitutionally protected rights is immeasurably eased.

Affirmed.

HAMLEY, Circuit Judge (dissenting):

The practice which the majority lightly disapproves without penalty in this case, or indicated sanctions for the future, I would condemn now as reversible error. In my opinion, Government interrogation of a person in custody pending trial for a federal offense, with knowledge that the accused has retained or appointed counsel to assist him in that criminal matter, which counsel has not been notified of the time and place of the interrogation and is not present, renders any statement obtained inadmissible in evidence against the accused, regardless of any advice the Government has given to the accused as to his rights, or any purported waiver given by the accused without first consulting with his counsel concerning such interrogation.

I first state the factual context in which this question has arisen. Appellant Coughlan, then nineteen years of age, and indigent, was arrested on September 12, 1966. On that day he was

---

2. " * * * and to have the Assistance of Counsel for his defence." U.S.C.A. Const. Amend. VI.

3. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Escobedo v. State of Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964).

4. There was convincing evidence that the father of the nineteen year old appellant requested that the officers talk to his son in jail.

interviewed at the Los Angeles Police Department by Irvin B. Wells, III, an agent of the Federal Bureau of Investigation. At the outset of the interview Wells advised Coughlan of his rights, substantially as outlined in Miranda v. State of Arizona, 384 U.S. 436, 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided on the previous June 13th. After being advised of his rights, Coughlan stated that he desired to make no statement, after which the interview was terminated.

On the following day, September 13, 1966, Coughlan was arraigned before a United States Commissioner, and attorney Bernard G. Winsberg was appointed to represent Coughlan. On September 15, 1966, Wells and other officers interviewed Coughlan's father at the latter's home. The father suggested that Wells interview Coughlan at the jail. At this time. Wells testified, he assumed that Coughlan had counsel inasmuch as he had been arraigned. Nevertheless, following the father's suggestion, Wells went to the county jail on September 16, 1966, to again interview Coughlan. He was accompanied by F.B.I. Special Agent Jim Cagnassola, and Detective Sergeant Henry Seret of the Los Angeles Police Department, all three being seated opposite Coughlan during the interview which followed.

Wells commenced the conversation by again giving Coughlan a full statement of his "Miranda rights." He also had Coughlan read a written statement setting out these rights. There was a place on this statement for Coughlan to sign his name, indicating waiver of such rights. However, Coughlan told Wells that while he would be willing to talk to the officers, he did not want to put his signature to the paper. Wells then asked Coughlan if he had an appointed attorney, and the latter replied that he did. The interrogating officers did not ask for the name of the attorney or make any effort to contact the attorney or arrange for his presence at the interrogation.

Wells testified that Coughlan did not immediately make a statement, but "sat and thought." Then Coughlan began making the inculpatory statement which was used against him at the trial.

Coughlan was indicted on September 29, 1966. His motion to suppress the evidence concerning his September 16, 1966 statement to the officers, was heard on November 1, 1966, and denied. A trial before the court without a jury was held immediately thereafter. The evidence concerning Coughlan's statement was received in evidence over objection, and Coughlan was convicted. This appeal followed.[1]

The described manner in which the interrogating officers proceeded on September 16, 1966 would have been entirely proper if Coughlan had not already told Wells, four days previously, that he did not wish to make a statement, and if the officers had not known that Coughlan then had appointed counsel to assist him in this criminal proceeding. These circumstances, in my opinion, significantly change the setting and required the officers to proceed in a different manner.

1. During argument on the motion to suppress, Coughlan's counsel offered several reasons why the statement should be suppressed, one being that the authorities had made no effort to notify his appointed counsel of the interrogation to be held on September 16, 1966 (R. 54). The trial court did not approve of the manner in which the law enforcement officers had proceeded, but did not regard it as a sufficient ground to suppress the evidence. The trial court said:

"I don't know that the Government or the law enforcement agencies are required to run for defendant's attorney if the attorney wishes to say anything or make a statement. It is in an area, I realize, where there may be some criticism on the Government if they go too far in interrogating the defendant in the absence of his counsel. It is preferable that, knowing that he has counsel, that he be interrogated in the company of his counsel. Certainly he would have been here if he had requested that his counsel be present."

On appeal counsel for Coughlan renewed the question in his opening brief. It was also discussed at some length during oral argument in this court.

Where one accused of a federal offense has not already stated that he did not desire to talk, a request that he do so, made in full conformity with Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and prior to the retention or appointment of counsel is unobjectionable. But, in my opinion, where such a person has, only a few days previously, told the interrogating officers that he did not wish to talk, a renewal of that request during a private and in-custody confrontation in the absence of counsel whom the officers know to have been retained or appointed, flouts the spirit of the Fifth and Sixth Amendments and the rationale of *Miranda*.[2]

Title 18 U.S.C. § 3006A(c), a part of the Criminal Justice Act of 1964, provides that a defendant " * * * shall be represented at every stage of the proceedings from his initial appearance before the United States commissioner or court through appeal." In-custody interrogation is undeniably a stage in the proceedings.[3] Coughlan was just as much entitled to have his counsel notified of that stage of the proceedings as of any other stage, such as the trial itself.

Without the presence of his counsel, this nineteen-year-old defendant was not advised of the considerations he should have in mind in deciding whether to make any statement, and if so, when to stop talking. Under these circumstances, Coughlan's purported waiver (which at best was only implied, since there was no explicit waiver),[4] was not made "volun-

2. In *Miranda*, the Supreme Court made it abundantly clear that the tests and procedures there prescribed for the future were designed primarily to encourage the presence of counsel at all in-custody interrogation. For example, the Court said:
   "The current practice of incommunicado interrogation is at odds with one of our Nation's most cherished principles—that the individual may not be compelled to incriminate himself." (384 U.S. at 457–458, 86 S.Ct. at 1619).
   "The presence of counsel, in all of the cases before us today, would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion." (384 U.S. at 466, 86 S.Ct. at 1623).
   "That counsel is present when statements are taken from an individual during interrogation obviously enhances the integrity of the fact-finding processes in court. The presence of an attorney, and the warnings delivered to the individual, enable the defendant under otherwise compelling circumstances to tell his story without fear, effectively, and in a way that eliminates the evils in the interrogation process." (384 U.S. at 466, 86 S.Ct. at 1623).

3. In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the recent "police lineup" case, the Supreme Court said:

   "It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment—the right of the accused to a speedy and public trial by an impartial jury, his right to be informed of the nature and cause of the accusation, and his right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution. Cf. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923." (388 U.S. at 226–227, 87 S.Ct. at 1932, footnotes omitted)

4. Coughlan did not say: "I do not want to talk to my counsel about this." Since Wells had just told him that counsel would be obtained for him if desired, Coughlan may not even have realized that the attorney appointed by the Commissioner was available for consultation in connection with the interrogation.
   In Miranda v. State of Arizona, 384 U.S. 436, at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Court implied that there could,

tarily, knowingly and intelligently," as required by *Miranda*. See Miranda v. State of Arizona, 384 U.S. 436, at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694.

In *Miranda*, commenting upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 979, the Supreme Court said:

> "The police also prevented the attorney from consulting with his client. Independent of any other constitutional proscription, this action constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake." (384 U.S. at 465, n. 35, 86 S. Ct. at 1623)

Just as surely as in *Escobedo*, the law officers here prevented the defendant's attorney from consulting with his client. Neglect to notify counsel of a planned interrogation is as effective in preventing consultation as the physical barrier which confronted Escobedo's attorney at the jail house door. While, in *Escobedo*, no advice as to rights was given to the defendant, but was given here, the federal agents here proceeded in such manner as to deprive Coughlan of the assistance of his then counsel in making a knowing and intelligent exercise or waiver of those rights.[5]

In Mathies v. United States, 126 U.S. App.D.C. 98, 374 F.2d 312, decided after *Miranda*, but involving a case which was not affected by the *Miranda* rulings,[6] Circuit Judge Burger said for the court:

> "The prospective application of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), plainly will require that such interviews [interviews of defendants without notice to their then retained or appointed counsel] can be conducted only after counsel has been given an opportunity to be present." (374 F.2d at 316, n. 3)

In Jones v. United States, 119 U.S. App.D.C. 284, 342 F.2d 863, Circuit Judge Edgerton, with whom Circuit Judges Bazelon, Fahy and Wright joined, had this to say concerning the act of prosecuting officials in taking the defendant before the grand jury to testify without notifying his counsel:

> "By failing to inform counsel of the impending examination, the prosecution deprived Short of his assistance at a crucial time and greatly to Short's prejudice. Counsel might even have succeeded in preventing him from being taken before the grand jury. In general, 'secret, ex parte interrogations of defendants are not conducted

---

in no event, be a waiver of counsel at the interrogation unless, after being fully advised of his rights, the defendant: (1) expressly states that he is willing to talk, (2) expressly states that he does not want an attorney, and (3) makes an inculpatory or exculpatory statement to the interrogators immediately thereafter. In the case before us, this second element is lacking. Moreover, even this *Miranda* test is confined to cases in which the defendant did not already have counsel.

**5.** As Professor Chafee has said:
"A person accused of crime needs a lawyer right after his arrest probably more than at any other time." (Chafee, 2 Documents on Fundamental Human Rights, 541 (1951–1952), quoted in Lee v. United States, 5 Cir., 322 F.2d 770, 778, n. 4)
In Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the Court said:

"The rule sought by the State here, however, would make the trial no more than an appeal from the interrogation; and the 'right to use counsel at the formal trial [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination.' In re Groban, 352 U.S. 330, 334 [77 S.Ct. 510, 1 L.Ed.2d 376] (Black, J., dissenting). 'One can imagine a cynical prosecutor saying: "Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial." ' Ex parte Sullivan [D.C.] 107 F.Supp. 514, 517–518." (378 U.S. at 487–488, 84 S.Ct. at 1763, footnote omitted)

**6.** *Miranda* is not to be applied retroactively, but only with regard to persons whose trials had not begun as of June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, at 734, 86 S.Ct. 1772, 16 L.Ed.2d 882.

when a prisoner has counsel. * * * This practice carries secret questioning to the point of invidious discrimination against indigent defendants.' Lee v. United States, 322 F.2d 770, 777 (5th Cir. 1963)." (342 F.2d at 871)[7]

The considerations discussed above lead me to the view that, in proceeding with the interrogation of Coughlan in the absence of his appointed counsel, the enforcement officers abridged Coughlan's constitutional rights, thereby rendering evidence concerning the interrogation inadmissible.

There is another reason why, in my view, it was improper for the United States Attorney to offer in evidence the statement obtained from Couglan at the September 16, 1966 interrogation. While this second reason does not involve a violation of constitutional rights, it nevertheless requires reversal of this federal conviction.

Canon 9 of the Canons of Professional Ethics, quoted in the margin, provides that a lawyer should not communicate with a party represented by counsel.[8] While this canon does not purport to govern the conduct of non-lawyers, such as the interrogating officers in this case, it does place a responsibility upon prosecuting lawyers not to sanction, or take advantage of, statements obtained by Government agents from a person represented by counsel, in the absence of such counsel.

Thus, in its Formal Opinion 95, interpreting Canon 9, issued on May 3, 1933, the then Committee on Professional Ethics and Grievances of the American Bar Association held that it is improper for a municipal attorney to permit police officers to obtain written statements from persons having personal injury claims against the municipality when the attorney knows that the claimants are represented by counsel. (Opinion on Professional Ethics, American Bar Association, 1967, 343 et seq.)[9] The Committee on Professional Ethics and Grievances also interpreted Canon 9 as providing that the attorney representing a plaintiff may not interview the defendant in the absence of his counsel concerning the facts of the case, even if the defendant is willing to discuss the matter. See Formal Opinion 108, issued on March 10, 1934, Opinions on Professional Ethics, American Bar Association, 1967, 359. Canon 9 is as applicable in criminal proceedings as in civil proceedings. See Dale W. Broeder: Wong Sun v. United States: A Study in Faith and Hope, 42 Neb.L.Rev. (1962–63), 483, at 601; Hen-

---

7. While Judge Edgerton wrote the opinion for the court, he was not speaking for the court, sitting in banc, with regard to this particular comment, since only three judges joined with him on this section of his opinion. However, none of the other judges expressed any contrary opinion concerning Judge Edgerton's general observation quoted above.

8. "A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel. It is incumbent upon the lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel, and he should not undertake to advise him as to the law." (Opinions on Professional Ethics, American Bar Association, 1967, page 43)

9. In this Opinion the Committee said, in part:

"It would be unavailing to contend that the police officers or detectives are not under the supervision and control of the law officer, but rather are under the supervision and control of the municipality. The attorney should not advise or sanction acts by his client which he himself should not do.' "

"Furthermore, the duty of an attorney is not confined solely to his client. He has some obligations respecting the court and his brethren at the Bar. Cannon 22, among other things, deals with candor and fairness to other lawyers. Such conduct on the part of the law officer of the municipality is not, we think, dealing with a brother lawyer with candor and fairness." (Opinions on Professional Ethics, American Bar Association, 1967, page 344)

ry S. Drinker: Legal Ethics (1953), 202.[10]

While the facts in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, differ from those of the present case, it is worth noting that the *Escobedo* court thought it appropriate to quote Canon 9. (378 U.S. at 487, note 7, 84 S.Ct. 1758, 12 L.Ed.2d 977)

In Mathies v. United States, 126 U.S. App.D.C. 98, 374 F.2d 312, the court disapproved, on ethical and other grounds, police interrogation of a represented defendant, but held that under the somewhat unusual facts of that case, the defendant had not been prejudiced. However the court gave this admonition:

"At oral argument counsel for the Government did not undertake to justify but only sought to explain how this episode developed. We assume that the episode will not arise again in the future." (374 F.2d at 316)

Two courts of appeals have indicated that the protection afforded represented defendants by Canon 9 should be extended to unrepresented defendants. In Lee v. United States, 5 Cir., 322 F.2d 770, the Fifth Circuit, in reversing a judgment of conviction on the ground that an in-custody statement given by the defendant to special agents of the Bureau of Narcotics in the absence of counsel, was inadmissible, made this statement:

"That is not all. The Government's brief concedes that secret, ex parte interrogations of defendants are not conducted when a prisoner has counsel. Presumably, legal ethics forbid a United States Attorney or a Government agent to bypass the lawyer of a defendant fortunate enough to have the means to engage counsel. This is a proper ethic for lawyers. But here the effect is to allow the prosecution to take advantage of an indigent prisoner without counsel, imperiling his constitutional rights by subjecting him to questioning intended to convict him, while recognizing an accused's freedom from secret inquisition if he can afford counsel. This practice carries secret questioning to the point of invidious discrimination against indigent defendants." (322 F.2d at 777)

In Ricks v. United States, 118 U.S. App.D.C. 216, 334 F.2d 964, the District of Columbia Circuit, in reversing a judgment of conviction where a statement from a defendant who did not then have counsel, was obtained during in-custody interrogation, had been received in evidence, said:

"If Ricks had had counsel, the police would not have interrogated him in private and at length in the Commissioner's cellblock.[18] Nor could they have taken him uncounselled into the District Court for the hearing which culminated in his delivery to the police and further interrogation. The mere fact that Ricks had not yet obtained counsel did not allow police to 'continue to hound [him] * * * to give

10. In his exhaustive article, Professor Broeder had these additional relevant observations to make:
"* * * should he [the accused] be allowed to obtain such representation [by counsel] and/or have had the foresight to secure counsel before his arrest, Canon 9 specifically forbids his interrogation by prosecuting attorneys." (at 601)
"Nor can any line justifiably be drawn under Canon 9 between cases where prosecuting attorneys themselves question suspects in the absence of their counsel and cases where, though in a position to control, they do nothing to prevent such questioning by the police.

To do so, of course, would put a premium on ignorance and intentional eye-shutting; and place the eye-shutting prosecutor in a better position than one who has taken the trouble to learn what is going on. * * * (at 602)
"Finally, let it be said that the fault lies not principally with the prosecutors but with the courts who have repeatedly countenanced prosecutor abuse of Canon 9 by affirming convictions in which such abuses were present while at the same time failing even to mention that a Canon 9 violation had occurred and/or suggesting that such conduct ought not in the future take place." (at 603)

evidence against [himself] \* \* \* until there is no escape at the trial \* \* \*.' Ricks' right to counsel did not depend on a race with the police." (334 F.2d at 970. Footnotes omitted, except footnote 18, quoted in part in the margin.)[11]

It will be observed that in both the *Lee* and *Ricks* cases, coming from different circuits, the court referred to a Government concession that it is not the practice of the United States Attorney to permit any communication to be had by members of his staff or the police with a defendant who is represented by counsel, except through or with the permission of counsel for the defendant. This causes one to wonder why this is the practice of two United States Attorneys and not all United States Attorneys. Or perhaps this represents a nationwide policy of the Department of Justice which, for some reason, was overlooked in the case now before us. If so, it may be that if Coughlan seeks certiorari, the Department of Justice will confess error.

While, for the foregoing reasons I would reverse Coughlan's conviction and remand for a new trial, I believe that for the reasons stated in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the view herein expressed should not be applied retroactively in other cases, but only as to cases in which the trial commences after this view becomes the law of the circuit.

11. In footnote 18 of the statement in *Ricks* quoted above, the court said:

"On oral argument the Government conceded the truth of appellant's assertion that 'When a defendant is represented by counsel, it is the practice of the United States Attorney not to permit any communication to be had by members of his staff or the police with the defendant except through, or with the permission of, counsel for the defendant. This is consistent with Canon 9, A.B.A. Canons of Professional Ethics."

In the *Ricks* case, the court also suggested that interrogation after the inception of the criminal process may be analogous to the taking of the accused's deposition, and thereby call for application of Rule 15, Federal Rules of Criminal Procedure. The court expressed the view that Rule 15 " \* \* \* clearly contemplates the presence of counsel for all parties at the deposition." (334 F.2d at 969–970, notes 15 and 19)