STATE OF NEBRASKA, APPELLEE, v. CHARLES E. MOORE,
APPELLANT.

202 N. W. 2d 740

Filed December 8, 1972.   No. 38477.

Richard L. Goos, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

The defendant was charged with assault with intent to commit rape and with sodomy, was found guilty by a jury on both counts, and sentenced to 2 5-year concurrent terms in the Nebraska Penal and Correctional Complex.

This appeal involves the question of whether the constitutional rights of the defendant to counsel and against self-incrimination were violated by the admission of oral incriminatory statements, amounting substantially to a confession. The admissions were made during an in-custody interrogation which followed immediately upon the giving of the Miranda warnings and a waiver by the defendant of his right against self-incrimination and to counsel. Previous to the interrogation counsel had been appointed for him at his request. Also at issue is the question of whether or not the evidence without the incriminating admissions is sufficient to sustain the convictions.

The record discloses the following: The defendant was brought before the county court on October 5, 1971, and the complaint read to him. He was without counsel. His constitutional rights were explained to him by the court. He requested counsel and executed an affidavit of poverty. The court then appointed the public defender to represent him and the date for preliminary hearing was set. The poverty affidavit on which the public defender acknowledged receipt of a copy was filed in the county court that same day. There was

apparently no communication between the public defender and the defendant before the interrogation which thereafter occurred. On that same day at about 6:30 p.m., while the defendant was in custody, he was interviewed by a detective of the Lincoln police department. A portion of this interview involving the Miranda warnings took place in the presence of one Cleveland Narcisse, an alleged accomplice, and in the presence of two of the interviewing officer's associates.

At the trial in the district court defendant's counsel objected to the admission of the incriminating statements on the grounds they were made after the appointment of counsel and to an officer who knew counsel had been appointed and without notification of counsel, and that they were therefore taken in violation of the defendant's rights under the Fifth and Sixth Amendments to the Constitution of the United States. The court held a hearing on admissibility outside the presence of the jury.

The evidence presented at the hearing and later to the jury, insofar as it is pertinent to the first issue, was that the interviewing officer, with the use of a forewarning card, gave the Miranda warnings and received answers in the following form: "A- The first question: 'I would like to advise you that I am a police officer. Do you understand that?' And he stated, 'Uh-huh.' And I asked him at that time to please state 'Yes' or 'No' to the questions. I re-asked him that question. He stated, 'Yes.'

"The second question: 'You have a right to remain silent and not make any statements or answer any of my questions. Do you understand that?' His answer was 'Yes.'

" 'Anything you say can and will be used against you in a court of law. Do you understand that?' 'Yes.' — His answer was 'Yes.'

" 'You have a right to talk to a lawyer and have him

present with you during questioning. Do you understand that?' His answer was 'Yes.'

" 'If you can not afford a lawyer, you have a right to have a lawyer appointed for you prior to questioning. Do you understand that?' His answer was 'Yes.'

" 'Do you willingly do without the services of a lawyer at this time?' His answer was 'Yes.'

" 'Knowing your rights in this matter, are you willing to make a statement to me now?' His answer was 'Yes.' "

The defendant testified at the hearing with the jury absent and said: ". . . he read me the rights, and so forth, which I understood very plainly, you know, and he just asked me questions, you know." At this hearing the defendant stated he had acknowledged to the interviewing officer his part in the incident substantially as that detective had related to the court. He also stated that when asked to give the same information in writing he declined to do so because he wanted to talk to his lawyer about that. This conformed to the testimony of the interrogating officer. Both the defendant and the officer stated the interrogation ceased when the defendant indicated he would not give a written statement until he consulted his lawyer. There was also testimony by the defendant that the officer told the alleged accomplice in defendent's presence that if he would "cop-out" it would go easier on him. The officer denied making such a statement. Before defendant made the admissions he at his request had a private conference with the alleged accomplice.

At the time of the interview the defendant was uncertain whether a lawyer had been appointed for him but knew that one would be. The officer knew at the time of the interview that legal counsel had been appointed for the defendant. The record does not disclose that the police had made or attempted to make any earlier in-custody interrogation of the defendant.

The court made a preliminary determination that the Miranda warnings had been properly given; that the

defendant had waived his privilege against self-incrimination and his right to have counsel present at the interrogation; and that the oral statements were voluntarily, knowingly, and intelligently made. We interpret this also as a finding by the court that the waivers were voluntary, knowing, and intelligent, which is what Miranda requires.

The court then permitted the evidence of the waivers and the admissions to be presented to the jury through the testimony of the officer. The defendant did not testify before the jury. Neither did the accomplice. The court gave the jury NJI No. 14.52 defining the findings the jury must make before considering the admissions as evidence.

Defendant's position as he succinctly states it in his brief is that a confession or admission resulting from an in-custody interrogation in the absence of counsel after defendant requested and had counsel appointed for him is inadmissible under the Sixth Amendment to the Constitution of the United States. The defendant relies upon the following language of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974: "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning."

He also cites People v. Fioritto, 68 Cal. 2d 714, 68 Cal. Rptr. 817, 441 P. 2d 625; and State v. Johns, 185 Neb. 590, 177 N. W. 2d 580. Also having application or touching the issue, we believe, are State v. Godfrey, 182 Neb. 451, 155 N. W 2d 438, cert. den. 392 U. S. 937; and State v. Woods, 182 Neb. 668, 156 N. W. 2d 786. The State cites and relies upon Coughlan v. United States, 391 F. 2d 371, cert. den. 393 U. S. 870, for the proposition that an accused may waive his right against self-incrimina-

tion and to have counsel present at interrogation even after counsel had been appointed at his request.

Miranda does not cover precisely the situation with which we are confronted here. The application which the defendant argues for would be an extension or enlargement of the doctrine of Miranda. The defendant's position is that if the defendant has an attorney, either retained or appointed, then there may be no interrogation of the defendant even if there has been no prior in-custody interrogation or attempts to interrogate. This position in substance amounts to the contention that once counsel is appointed or has been retained there can be no waiver unless it be by counsel or in his presence.

Miranda does not go that far.

In Miranda the court said: "The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is *first subjected to police interrogation while in custody* at the station or otherwise deprived of his freedom . . .." (Emphasis supplied.) Miranda concerns itself primarily with removing the inherent intimidation of custodial interrogation by assuring that the defendant knows he does not need to say anything, that anything he does say can and will be used against him, that he has the right to counsel during the interrogation, that counsel will be provided by the State if necessary, and that the authorities will respect his right to remain silent if he wishes. In this way there is an objective standard to use in determining whether a waiver is voluntary, knowing, and intelligent, and the need for a subjective examination of these matters by the court is to a large extent removed. In Miranda and its companion cases the defendants did not have counsel and were interrogated without having been previously advised of their rights. These cases have no direct application to the situation where the defendant asked for and receives counsel at his preliminary arraignment

and there has been no attempt at custodial questioning.

In Miranda it was said: "If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on *the basis that the individual does not have . . . retained attorney."* (Emphasis supplied.) This language does not imply that a defendant who does have counsel may not be interrogated. On the contrary, it seems to recognize that the Miranda warning must be given even to those who have counsel. Miranda also says: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, *that he wishes to remain silent,* the interrogation must cease. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." (Emphasis supplied.)

When the defendant asked to have an attorney appointed he was not being interrogated by the police. he was before the magistrate. There was no custodial interrogation until after the warning had been given and an express waiver made.

The doctrine for which the defendant contends is a logical expansion of the Miranda doctrine, but so far it has not been so extended by the Supreme Court of the United States. That court has not expanded the rule in Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, in cases where only that rule was applicable. It may not expand Miranda. See Frazier v. Cupp, 394 U. S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684. There the court held that there was no denial of the right to counsel by the police on interrogation of a suspect, so as to render a confession inadmissible in a State prosecution, notwithstanding the suspect showed signs of reluctance during questioning and stated: " 'I think

I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now.' " The officer replied: " 'You can't be in any more trouble than you are in now.' " The court said it was possible that the questioning officer took the defendant's remark not as a request that the interrogation cease but merely as a passing comment. The defendant did not pursue the matter but continued answering questions.

The defendant's position in this case is very eloquently stated by Judge Hamley in a forceful dissent in Coughlan v. United States, *supra*. Among other things he quoted Chief Justice Burger (then Circuit Judge) as follows: " 'The prospective application of Miranda v. State of Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), plainly will require that such interviews [interviews of defendants without notice to their then retained or appointed counsel] can be conducted only after counsel has been given an opportunity to be present.' (374 F. 2d 316, n. 3)"

A logical extension of the language of our own cases lends some support to the plaintiff's position. In State v. Godfrey, *supra*, the defendant was arrested in connection with a burglary. At the police station he was read his Miranda rights and replied in the negative when asked if he cared to give a statement. He was then booked and placed in a cell. Later he was called back, reread his rights, and after responding yes to the crucial questions, he then made a confession. He would not sign the statement, however, and at the trial the unsigned statement was introduced into evidence over the defendant's objection. This court affirmed the conviction, saying that merely answering no to the initial request to make a statement was not sufficient to invoke the right to counsel, and that this also did not invalidate a later waiver that is voluntary, knowing, and intelligent. The only real difference between Godfrey and the present case is that Moore had requested and had counsel appointed at his preliminary arraignment

and prior to any interrogation. In State v. Godfrey, *supra,* this court said: "Miranda clearly requires that if a defendant in custody at any time indicates that he wants an attorney *before speaking to the police, any interrogation must cease* until an attorney is present and the right continues to have the attorney present during any subsequent questioning." (Emphasis supplied.) That language does not apply to the situation here because the defendant had not indicated he wanted an attorney "before speaking to the police" as there was no interrogation in progress and none had even been attempted. When the defendant was first confronted with police in-custody interrogation he expressly waived his rights to remain silent and to counsel. When asked to give the statement in writing, he then stated he wanted to talk to his counsel about that. This right was respected and the interrogation did in fact cease.

In State v. Woods, *supra,* the decision of this court turned upon the determination of the trial court made at an admissibility hearing that following a first demand for counsel defendant had subsequently waived his rights in writing and made a voluntary confession. No counsel had been appointed before the final waiver. It seems to simply stand for the proposition that although the defendant had previously demanded counsel he could thereafter waive that right. To us it seems simply to say that a second giving of the Miranda warnings is not part of the interrogation prohibited after either right to remain silent or right to counsel has been invoked. We caution, however, against any delay whatsoever in appointment of counsel or giving access to counsel, once right to counsel has been invoked, in order to repeatedly administer the warnings in the hope of ultimately securing a waiver.

Defendant places primary reliance upon State v. Johns, *supra.* In that case the defendant was represented by retained counsel. He was arrested in Douglas County

and this is where his counsel had his office. He asked to see his attorney. He was told he could but he was unable to contact his attorney immediately. The Miranda warnings were given and he stated in writing: " 'I would like to have my attorney present.' " He was then taken by officers to the Dodge County jail. When the defendant's attorney learned of his whereabouts and before any interrogation in Dodge County began, counsel called the county attorney of that county and advised him that he did not wish to have the defendant questioned. The county attorney agreed to advise the police department but for some reason did not until after the waiver of rights had been secured from the defendant and a confession obtained. This court held the confession was inadmissible and reversed the conviction. A dissenting opinion in Johns interpreted the majority as being in conflict with State v. Godfrey, *supra,* and indicated that the majority opinion meant that "once a defendant has demanded or obtained a lawyer, he cannot thereafter be questioned under any circumstances in the absence of his lawyer and cannot waive the right to have his lawyer present, at least unless such waiver is made in the presence of his lawyer," and that this interpretation of the majority opinion made the statements inadmissible in the Johns case.

We do not think the majority opinion in State v. Johns, *supra,* goes so far as the defendant here seems to believe or as the above dissenting opinion indicated. We think there are at least two substantial distinctions between Johns and this case: (1) The defendant in Johns had *during a police interrogation once unequivocally* invoked the right to have counsel present during questioning, and (2) the delay by the county attorney in relaying to the police counsel's request that his client be not questioned constituted at least a negligent interference by the State with the defendant's right to counsel and was in effect an unconstitutional deprivation of right to counsel.

People v. Fioritto, *supra,* is not applicable. It involved continued questioning of a defendant who had invoked his rights.

We determine that the incriminating statements of the defendant were properly received. Except for the question of the absence of counsel, neither the evidence here nor the applicable rules require that we overturn the trial judge's preliminary determination that the waiver was voluntary, knowing, and intelligent. State v. Longmore, 178 Neb. 509, 134 N. W. 2d 66; State v. Long, 179 Neb. 606, 139 N. W. 2d 813. The fact that a waiver may seem or be unwise or not smart when either prospectively or retrospectively considered does not necessarily import that it was not intelligently made. United States v. Hall, 396 F. 2d 841; Pettyjohn v. United States, 419 F. 2d 651. The precise situation we have here was considered by the Ninth Circuit in Coughlan v. United States, *supra,* and that court determined adversely to the defendant's position. A situation analogous to that here presented was considered by the Fifth Circuit in Narro v. United States, 370 F. 2d 329, cert. den. 387 U. S. 946. In that case the defendant indicated that her family *would be getting* an attorney for her. She, however, waived her right to have counsel at the interrogation. The court held the waiver was valid. From the standpoint of the defendant Moore his position and that of Narro is the same where as here the defendant knew counsel would be, if not already, appointed. Some state courts have expanded the Miranda doctrine and support the defendant's contention. State v. Witt (Mo., 1967), 422 S. W. 2d 304; State v. Herman, 3 Ariz. App. 323, 414 P. 2d 172.

We, as all courts, are bound of course to follow the mandates of the Constitution of the United States as interpreted by the Supreme Court of the United States. But what we are asked to do here is to anticipate a possible expansion of the Miranda doctrine which may or may not develop. We do not feel constrained to

lead the way. The pronouncements of Miranda at the time of their promulgation represented new constitutional theory designed to correct perceived imbalances in the criminal processes. The decision in this case involves closely competing values, to wit, the implementation of the constitutional rights of the accused and the effectiveness of the police investigatory process. The need for further correction of an imbalance is not apparent.

This opinion should in no way be interpreted as lessening the ethical responsibilities of the prosecutor to observe the obligations imposed upon him by Canon 7 of the Code of Professional Responsibility with reference to communication with parties represented by counsel and he cannot countenance violations by those in the investigatory process who are or when they become subject to his supervision and control. This much certainly is implicit in State v. Johns, *supra.*

We have, of course, examined the whole record. That the alleged crimes occurred is unquestionable. The victim's male companion identified the defendant. There was some corroboration of this identification by the victim and an additional witness who happened to come upon the parties. The evidence to convict would have been legally sufficient to support a jury verdict even without the admissions but, of course, would have been much less persuasive. Had the rulings of the court on the admission been erroneous the error would without question have been reversible.

AFFIRMED.

NEWTON, J., concurring.

I concur in the result arrived at in the majority opinion for the reasons, and on the basis of citations, appearing in my dissent in State v. Johns, 185 Neb. 590, 177 N. W. 2d 580.