STATE OF NEBRASKA, APPELLEE, V. CARVAN D. JACKSON, APPELLANT.

290 N. W. 2d 458

Filed March 25, 1980. No. 42773.

Alan L. Plessman, for appellant.

Paul L. Douglas, Attorney General, and Lynne Rae Fritz, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Defendant, Carvan Jackson (Jackson), was charged in a multicount information with committing the offenses of: (1) Assault with intent to rob; (2) use of a firearm to commit a felony; and (3) shooting with intent to kill, wound, or maim. He was convicted of all the aforementioned offenses after trial to the jury; and was sentenced to imprisonment in the Nebraska Penal and Correctional Complex for a term of 2 years on the first count; for a term of 3 years on the second count, said sentence to be served consecutively to the sentence imposed for count one; and for a term of 3 years on the third count, to be served concurrently with the sentences imposed on the first and second counts. Furthermore, credit was given for 129 days spent in custody prior to sentencing, and costs of the action were taxed to Jackson. He has appealed those convictions to this court. We affirm.

In the early afternoon hours of December 12, 1978, two men entered a liquor store in Lincoln, Nebraska. In the store at that time were the manager of the store, a customer, and a liquor salesman. One of the two men produced a handgun and ordered the manager to open the cash register. As the manager was walking toward the register, he was shot by the man holding the weapon. Even though he

was wounded, the manager attempted to open the cash register. However, these attempts proved futile because the register locked shut. Shortly thereafter, someone in the store yelled "let's go" and the two men left the store without taking anything.

The police were summoned and their investigative efforts uncovered footprints in the vicinity of the liquor store which led to a nearby residence. The person who lived in the first floor apartment of the residence allowed the police to enter and conduct a search of the apartment. A handgun was found in the bedroom of the apartment. This weapon was later tested and found to be the weapon used to wound the manager of the liquor store.

Among the various persons found in the apartment at the time of the search was defendant Jackson. He was placed under arrest following the discovery of the weapon. Prior to his transfer to the police headquarters, Jackson volunteered a statement to one of the policemen: "[W]e did it, we're the ones who did it. We were the ones that you are hunting for." Jackson was then transferred to the police headquarters where he later made a statement to the police.

A lineup concerning this case was conducted subsequent to the day of the robbery. At that time, the police department was informed that Jackson was being represented by counsel. On December 19, 1978, Jackson made a statement to Detective Richard Kohles of the Lincoln Police Department that it was his idea to rob the liquor store. The evidence as to whether Jackson was advised of his Miranda rights and whether he waived his right to have counsel present at the December 19, 1978, interrogation was conflicting. The aforementioned statements made by Jackson were introduced at trial by the State. Testimony of the persons inside the liquor store at the time of the robbery and of other persons

in the neighborhood of the liquor store at the time was also adduced at trial. On the basis of the evidence presented at trial, the jury found Jackson to be guilty on all three counts. Sentencing was imposed as previously set forth.

Jackson thereafter appealed, assigning as error the trial court's failure to exclude the testimony of the police officers with reference to statements made by him to those officers. Specifically, counsel for Jackson contends that statements taken during interrogation of "in-custody" defendants after the police or prosecution are aware that defendant is represented by counsel are involuntary and inadmissible unless defendant's counsel first grants permission to the police to hold the interrogation.

In this case the State moved for summary affirmance pursuant to Rule 20-A (2), Revised Rules of the Supreme Court, 1977, on the ground that that issue had not been raised in Jackson's motion for a new trial presented in the trial court. We denied this motion but ordered the appellant and appellee to supplement their briefs, and to address the issue of whether the rule announced in People v. Arthur, 22 N. Y. 2d 325, 292 N. Y. S. 2d 663, 239 N. E. 2d 537 (1968), should be held to be the law of this state. They have done so, and we now examine that issue.

In People v. Arthur, *supra*, a pre-Miranda case, the New York Court of Appeals reversed a conviction of attempted murder in the second degree. In that case it appears the defendant was arrested by police near a river and immediately confessed that he had thrown his son into the river. Defendant was then taken to police headquarters where he was interrogated by the police, after which a written statement was prepared. Defendant signed this statement at approximately 6:45 p.m., 1¼ hours after the crime occurred. It further appears that an attorney who had represented the defendant in another mat-

ter became aware of the arrest and went to police headquarters to advise the defendant. The attorney arrived at approximately 6:20 p.m. and informed the police of the attorney-client relationship between him and the defendant. However, he was not allowed to contact the defendant until after the statement had been signed. Following his meeting with the defendant, the attorney instructed the police that the defendant should not be further interrogated. The next day, the defendant made incriminating statements during an interrogation conducted outside his attorney's presence and without his attorney's knowledge. He was convicted at the trial in which those statements were introduced. The conviction was reversed by the Court of Appeals, which stated: "[I]n enunciating the fundamental right of the accused to be represented by counsel, we painted with broad strokes. Thus, in *People v. Donovan,* Judge Fuld, speaking for the court, stated at * * * [13 N. Y. 2d 148, 151, 243 N. Y. S. 2d 841, 843, 193 N. E. 2d 628, 629 (1963)]: '[W]e are of the opinion that, quite apart from the Due Process Clause of the Fourteenth Amendment, this State's constitutional and statutory provisions pertaining to the privilege against self incrimination and the right to counsel * * *, not to mention our own guarantee of due process * * *, require the exclusion of a confession taken from a defendant, during a period of detention, after his attorney had requested and been denied access to him' (accord *People v. Failla,* 14 N. Y. 2d 178, 180 [250 N. Y. S. 2d 267, 269, 199 N. E. 2d 366, 367 (1964)]).
* * *

"[T]he principle which may be derived from the pre-*Miranda* (*Miranda v. Arizona,* 384 U. S. 436 [86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]) cases is that, once the police know or have been apprised of the fact that the defendant is represented by counsel or that an attorney has communicated with the police for the purpose of representing the defendant, the

accused's right to counsel attaches; and this right is not dependent upon the existence of a formal retainer.

\* \* \*

"Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney of the defendant's right to counsel (*People v. Vella,* 21 N. Y. 2d 249 [287 N. Y. S. 2d 369, 234 N. E. 2d 422 (1967)]). There is no requirement that the attorney or the defendant request the police to respect this right of the defendant." See, also, People v. Cunningham, 49 N. Y. 2d 203, 424 N. Y. S. 2d 421, 400 N. E. 2d 360 (1980), which extended protection to a defendant who had requested representation by legal counsel but was not yet represented.

We note in passing that the Court of Appeals clearly based the Arthur rule on the New York Constitution and not on the United States Constitution. *"Arthur's* requirements exceeded those of the Warren Court decisions, so that by the twilight of the Warren era in the late sixties, the New York Court of Appeals could properly claim that '[t]he right to counsel in this State has had a rich development under the State's Constitution.' " Galie, State Constitutional Guarantees and Protection of Defendants' Rights: The Case of New York, 1960-1978, 28 Buffalo L. Rev. 157 (1979), quoting People v. Blake, 35 N. Y. 2d 331, 361 N. Y. S. 2d 881, 320 N. E. 2d 625 (1974). See, also Kelder, Criminal Procedure, 30 Syracuse L. Rev. 15 (1979).

In Nebraska, we have previously had the opportunity to examine this issue and argument in a case factually similar to the instant case, and have rejected it. In State v. Moore, 189 Neb. 354, 202 N. W. 2d 740 (1972), this court stated: "The application which the defendant argues for would be an extention or enlargement of the doctrine of Miranda. The

defendant's position is that if the defendant has an attorney, either retained or appointed, then there may be no interrogation of the defendant even if there has been no prior in-custody interrogation or attempts to interrogate. This position in substance amounts to the contention that once counsel is appointed or has been retained there can be no waiver unless it be by counsel or in his presence.

"Miranda does not go that far."

We further stated that although the rule might someday be extended as requested in State v. Moore, *supra*, we did not feel a compulsion to be among the first of the courts to so extend those rights. We are still not persuaded that our rule should be changed at this time. There has been little acceptance of the Arthur rule outside New York. Even in that jurisdiction, there appears to be a disagreement as to the extent of the rule. See, for example, People v. Kaye, 25 N. Y. 2d 139, 303 N. Y. S. 2d 41, 250 N. E. 2d 329 (1969), where a spontaneous statement to a police officer was held to be admissible.

Also, so far as we have been able to ascertain, the Supreme Court of the United States has not as of this date adopted the New York position on this issue. In Brewer v. Williams, 430 U. S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977), the court stated: "There has occasionally been a difference of opinion within the Court as to the peripheral scope of this constitutional right. [Citations omitted.] But its basic contours, which are identical in state and federal contexts, [citations omitted], are too well established to require extensive elaboration here. Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him — 'whether by way of formal charge, preliminary hearing, in-

dictment, information, or arraignment.'
* * *

"The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not,* without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not."

The circuit courts have also declined to adopt the Arthur rule. See, United States v. Monti, 557 F. 2d 899 (1st Cir., 1977); United States v. Barone, 467 F. 2d 247 (2d Cir., 1972); United States v. Crook, 502 F. 2d 1378 (3d Cir., 1974), cert. den., 419 U. S. 1123, 95 S. Ct. 808, 42 L. Ed. 2d 823 (1975); United States v. Springer, 460 F. 2d 1344 (7th Cir., 1972), cert. den., 409 U. S. 873, 93 S. Ct. 205, 34 L. Ed. 2d 125 (1972); Coughlan v. United States, 391 F. 2d 371 (9th Cir., 1968), cert. den., 393 U. S. 870, 89 S. Ct. 159, 21 L. Ed. 2d 139 (1968); United States v. Brown, 569 F. 2d 236 (5th Cir., 1978).

Other state courts have also declined to follow New York's rule. See, Pierce v. State, 235 Ga. 237, 219 S. E. 2d 158 (1975); Lamb v. Commonwealth, 217 Va. 307, 227 S. E. 2d 737 (1976).

We therefore refuse to adopt the Arthur rule as the law of this state. Jackson's appeal is based on the alleged failure of the trial court to suppress statements made by him to police officers. As earlier stated, the evidence with reference to whether Jackson was advised of his constitutional rights and whether he waived those rights was conflicting. When evidence is conflicting on a motion for suppression of evidence, the decision upon the motion is for the trial court and will not be reversed on appeal in the absence of an abuse of discretion by the court. State v. Weinacht, 203 Neb. 124, 277 N. W. 2d 567 (1979); State v. Harig, 192 Neb. 49, 218 N. W. 2d 884 (1974). See, also, State v. Williams, *ante* p. 56, 287 N. W. 2d 18 (1979). After reviewing the record, we find that no abuse of discretion occurred here and

that the decision of the trial court must be sustained.

There appearing to be no error requiring reversal of this case, the judgment and sentence of the trial court must be affirmed.

AFFIRMED.

KRIVOSHA, C. J., and WHITE, J., concur in result.