STATE OF NEBRASKA, APPELLEE, V.
KALON D. STRICKLAND, APPELLANT.

306 N.W.2d 600

Filed June 5, 1981. No. 43620.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendant was charged with the crime of burglary and entered a plea of not guilty. Motions to suppress physical evidence and a confession were filed. Hearings were heard on these motions and the motions were overruled. The defendant then waived his right to a trial by jury and consented to be tried before the court upon documentary evidence consisting of the complete police reports of the investigation, which included the written confession. He was found guilty by the court and sentenced to a term of 2 to 3 years in the Nebraska Penal and Correctional Complex.

The sole assignment of error on appeal to this court is that the court erred in refusing to suppress the statement or confession given by the defendant to the police following his arrest.

The arguments which the defendant makes supporting the assignment of error are two. (1) Where the person in custody has, after the *Miranda* warnings have been given, initially refused to make a statement, but at a later time agrees to make a statement, then it is to be presumed that the latter waiver is involuntary and a heavy burden rests upon the State to overcome that presumption, and the State has not overcome the presumption in this case. (2) The defendant could not waive his right to remain silent in the absence of the presence of or notice to counsel.

The nature of the two assignments makes it possible to discuss them together. A review of the evidence pertinent to the issue is necessary before the governing legal principles are discussed. At about 4:30 a.m. on Saturday, July 14, 1979, police officers on patrol received radio calls indicating that a burglary had just occurred at "Canfield's," a sporting goods and

gun store located at 2415 Cuming Street in Omaha. The police had previous information of recent burglaries in which weapons were stolen, the description of an automobile believed involved in these burglaries, and an address at which the guns were being marketed, to wit, 19th and Clark Streets, Omaha, Nebraska. An eyewitness to the Canfield burglary described the automobile involved in the Canfield burglary as similar to the one involved in the other reported burglaries.

One or more police vehicles were dispatched to the 19th and Clark Streets location. A vehicle matching the description of the car believed involved was being parked and two individuals, one being the defendant, got out. The other person, a female, was seen to dispose of a handgun by dropping it. Four new shotguns, some with sales tags still on, were observed in the back seat of the automobile. The defendant was observed getting out of the car and was arrested. The shotguns were later identified as those taken in the Canfield burglary. Keys to the auto were found on the person of the female. She was also arrested. The defendant was identified by an eyewitness to the burglary as looking like the man who had entered Canfield's and removed the guns and placed them in the car.

At 6:26 a.m. at the police station, the *Miranda* warning and rights were read to the defendant by Sergeant Mohatt. The defendant answered all the questions in the affirmative except the last, as to which he answered no, i.e., he would not make a statement. The defendant did not ask for an attorney. There was no further interrogation at that time.

Some hours later on July 14, pursuant to standard practice, the *Miranda* warnings were again administered by members of the burglary unit to see if the accused had changed his mind. He had not. He did not request an attorney at that time.

On July 16 at 10:25 a.m., Sergeant Kocourek of the burglary unit again administered the *Miranda*

warnings. This time the defendant answered all of the questions in the affirmative, including the following: "Q. Knowing your rights in this matter, are you willing to make a statement to me now? A. Yes."

Defendant then gave a short written statement in which he admitted his part in the burglary and implicated the other two suspects. On Saturday morning at 8 or 8:30 a.m., a member of the Douglas County Public Defender's office, apparently pursuant to a standard practice and presumably in accordance with the duties placed upon the public defender by Neb. Rev. Stat. §§ 29-1804.03 and 29-1804.04 (Reissue 1979), appeared at the police station for the purpose of talking to all prisoners suspected of or charged with a felony. There he talked to the defendant. He told the defendant he would probably be representing him at his arraignment and twice advised him not to give the police officers any information. The testimony is that one such admonition took place within the hearing of police officers.

There is some conflicting evidence. The defendant, at the suppression hearing, testified that his decision to make a statement was induced by various threats, promises, and inducements which he claimed were made to him by various police officers. The testimony was denied by the police officers allegedly involved. Defendant also testified that he was not allowed to use the telephone from the time of the arrest until Monday afternoon. The police records indicate that all the suspects were denied telephone privileges during the initial stages of the investigation beginning at 4:30 a.m. until 3:20 p.m. on July 14, at which latter hour an order was made: "The Suspect [earlier identified in the report] Can Have Telephones." The trial judge who heard the testimony, in announcing his decision on the motion to suppress, stated that he accepted the testimony of the officers and not that of the defendant.

The defendant's counsel acknowledges that all state

and federal courts, except the state of New York, have refused to adopt a per se rule that the invocation of the right to remain silent prohibits all further questioning without the presence of counsel. Defendant relies upon *State v. Johns*, 185 Neb. 590, 597, 177 N.W.2d 580, 585 (1970), where we said: "Repetitions of advisory warnings are not a satisfactory substitute for granting an unequivocal request for counsel." In this case, however, the evidence does not show that the defendant ever made a request for counsel or that counsel be present during the interrogation. He did not even testify that his telephone requests were for the purpose of calling counsel. Over 48 hours elapsed between the second time the *Miranda* rights were given and his second refusal and the third time his rights were read, at which time he agreed to make a statement.

Factfindings by the trial court on motion to suppress, etc., are accepted by us unless clearly wrong. In *State v. Teater, ante* p. 127, 131, 306 N.W.2d 596, 598-99 (1981), we held: "In determining whether the State has shown the admissibility of custodial statements by the requisite degree of proof, this court will accept the factual determination and credibility choices made by the trial judge unless they are clearly erroneous, and in so doing we will look to the totality of the circumstances. [Citations omitted.]"

Accepting the factfindings of the trial judge, the evidence then shows that after each of the occasions on July 14 when he declined to make a statement, the defendant's right to cut off questioning was scrupulously honored. In *Michigan v. Mosley*, 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975), the Supreme Court of the United States held that a second request after the passage of a significant period of time could be made and did not violate *Miranda* principles. The court there said at 104: "We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends

under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" In *North Carolina v. Butler*, 441 U.S. 369, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979), the Supreme Court of the United States, on an appeal from the Supreme Court of North Carolina where that state court held (interpreting *Miranda*) that where a defendant had once refused to make a statement there could be no subsequent waiver without counsel, held at 374-75: "The *per se* rule that the North Carolina Supreme Court has found in *Miranda* does not speak to these concerns. There is no doubt that this respondent was adequately and effectively apprised of his rights. The only question is whether he waived the exercise of one of those rights, the right to the presence of a lawyer. Neither the state court nor the respondent has offered any reason why there must be a negative answer to that question in the absence of an *express* waiver. This is not the first criminal case to question whether a defendant waived his constitutional rights. It is an issue with which courts must repeatedly deal. Even when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" The record indicates that the defendant has had considerable experience in the criminal courts.

Our own court has recently held: "The applicable standard to determine the admissibility of statements made by an accused during a custodial interrogation is whether the accused intelligently, knowingly, and voluntarily waived his right to remain silent and his right to have counsel present at that time." *State v. Jackson*, 205 Neb. 806, 290 N.W.2d 458 (1980) (syllabus of the court). See, also, *State v. Moore*, 189 Neb. 354, 202 N.W.2d 740 (1972); *State v. Fuller*, 203 Neb. 233, 278 N.W.2d 756 (1979).

Since the preparation of this opinion but before its

adoption by the court, the opinion of the Supreme Court of the United States in *Edwards v. Arizona*, 49 U.S.L.W. 4496, was released on May 18, 1981. The court there held that the use of a petitioner's confession against him at his trial violated his right under the fifth and fourteenth amendments to have counsel present during custodial interrogation as declared in *Miranda* where, having exercised his right on January 19 to have counsel present during his interrogation, the petitioner did not validly waive that right on the following day.

We do not believe that the case governs this one for various reasons. In *Edwards* the proceeding had already reached the accusatory stage. The complaint had been filed. In the case before us the matter was still in the investigatory stage. In *Edwards* the defendant had specifically invoked his right to have counsel present; in the case before us defendant had not requested counsel at any of the times the *Miranda* cautions were given.

The facts in *Edwards* show that the accused had been given the *Miranda* warnings and agreed to make a statement. Later he changed his mind and said: "'I want an attorney before making a deal.'" Questioning ceased but he was not given an attorney. Later the *Miranda* warnings were given and he agreed to and did make a statement. The Supreme Court of the United States said (and these words contain the critical distinction): "Here, the critical facts as found by the Arizona Supreme Court are that Edwards asserted his right to counsel and his right to remain silent on January 19, but that the police, without furnishing him counsel, returned the next morning to confront him and as a result of the meeting secured incriminating oral admissions. Contrary to the holdings of the state courts, Edwards insists that having exercised his right on the 19th to have counsel present during interrogation, he did not validly waive that right on the 20th. For the following reasons, we agree.

"First, the Arizona Supreme Court applied an erroneous standard for determining waiver *where the accused has specifically invoked his right to counsel.*" (Emphasis supplied.) *Id.* at 4497.

The record is sufficient to clearly support the trial court's finding that there was an intelligent and voluntary waiver of the right to the presence of counsel at the time the statement was given, and we cannot say it was clearly erroneous. The evidence likewise supports the trial court's conclusion that the confession was intelligently and voluntarily given.

AFFIRMED.